CASE No. 1080.

WIESENFELD, STERN & CO. v. STEVENS & CURETON.

1. Whether an assignment for the benefit of creditors was executed with intent to defeat, hinder or delay, is a question of fact. The finding by the Circuit judge that there was no such intention in this case, approved.
2. A and B, partners in trade, conveyed each to the other, by exchange, their interest respectively in two lots of land held by the partnership, and on the next day made an assignment for the benefit of their creditors of all the rest of their partnership property, preferring some, and authorizing the trustees to defer sale if to the interest of the creditors, the rents and profits meantime to pass under the assignment. No mention was made of B's lot, but A's lot, which contained two acres, was specially reserved as a homestead to him. Afterwards A became a bankrupt, and one and two-thirds acres of this lot were assigned to him as a homestead; and he then obtained his discharge in bankruptcy. *Held*, that the assignment was rendered fraudulent and void, neither by the preference to some of the creditors.
3. Nor by the reservation of A's lot as a homestead.
4. Nor by the authority to postpone the sale.
5. And the deed from B to A for this lot could not be canceled in an action brought to set aside the assignment; nor could its validity be questioned by creditors who, by notice, were made parties to the bankrupt proceedings.

Before HUDSON, J., Lancaster, September, 1880.

This was an action commenced on November 18th, 1879, by the plaintiffs, against James H. W. Stevens and Thomas J. Cureton, who had been merchants and copartners, under the firm name of Stevens & Cureton, and against R. M. Miller and T. G. Cureton, trustees, under an assignment made by Stevens & Cureton, for the benefit of their creditors. The object of the action was to set aside this assignment as fraudulent, and also a deed from Cureton to Stevens, for the appointment of a receiver, account by the trustees, injunction, &c. The debt to plaintiff was a partnership debt, contracted prior to February 12th, 1878, when the deeds stated in the opinion were exchanged between Stevens and T. J. Cureton. In October, 1879, this debt was

put in judgment. On February 13th, 1878, the deed of assignment was executed. In this assignment no mention is made of the lot conveyed to Cureton, but all of the personal property of the firm, and several tracts of land are transferred, including "another tract containing fifty acres, situate in the town of Lancaster, * * * excepting the lot or portion of said tract on which is situate the residence of the said J. H. W. Stevens, containing about two acres, bounded * * * which said lot is hereby excepted and reserved as a homestead for said J. H. W. Stevens." The assignment continues :

To have and to hold the real and personal property aforesaid, with all the rights, privileges and appurtenances thereto belonging, unto the said R. M. Miller and T. G. Cureton, their heirs and assigns, in special trust and confidence nevertheless, as follows, that is to say, the said trustees shall proceed to take immediate possession of the said property, and after having given notice to the creditors herein provided for, as the law directs, shall proceed to collect the debts and sell said property, for cash, as speedily as practicable, by public or private sale, as in their judgment may best tend to promote the interest of the said creditors ; should the said trustees find it impracticable to sell the real estate aforesaid at what they consider fair and adequate prices, they are hereby specially empowered to defer the sale thereof for a period not exceeding two years from the date hereof, and in the meantime to rent or operate the said farms as in their judgment may be best for the interests of the said creditors, and in the event that the said trustees shall determine to rent or operate the said farms, or any of them, they shall have the right to retain in their possession the mules, wagons, farming implements, corn and forage, and such other articles of personal property as may be necessary in operating the said farms, and out of any money that may come into their hands, to purchase such provisions and supplies as may be necessary for the purpose, and to replenish and keep up the stock of goods in store, if deemed best, to enable the assignee to run the farm and collect the debts of the firm. The proceeds arising from the sale of said property and any profits that may be realized from operating the said farms the said trustees shall apply as follows, after retaining their commissions, to wit :

*First.* To defraying the expenses incident to the execution of this trust, including attorney's fees.

*Second.* To the payment of the following claims, to wit : S. C. Witherspoon, $200 ; M. B. Massey, $75 ; John Sinclair, $50 ;

Merchants' and Farmers' Bank (Charlotte) over-draft, $200.26 ; also any balance that may be due any of the laborers on the Miller plantation.

*Third.* To the payment of all the other debts, equally and ratably ; and,

*Fourth.* Any surplus that may remain in the hands of the said trustees after paying the debts and expenses and charges aforesaid, they shall apply to the payment of all other debts that the said firm may owe, equally and ratably.

The trustees carried on the business of the firm and the farms, defraying the expenses thereof, until the first Monday in February, 1879, when sale was made of the assigned lands, goods and other personalty. Other facts are stated in the opinion. The Circuit decree is as follows :

The object of this action is to set aside, as fraudulent and void, a deed of assignment, executed and delivered to R. M. Miller and T. G. Cureton, by J. H. W. Stevens and T. J. Cureton, copartners in trade, under the firm name of Stevens & Cureton. The assignment was executed and delivered on February 13th, A. D. 1878, and was for the benefit of the creditors of the said failing firm. In the assignment the order of payment of creditors is prescribed and certain preferences are made, all of which will fully appear by reference to the deed.

The deed is assailed by the plaintiffs principally on two grounds, viz. :

1. Because, in the deed is reserved to J. H. W. Stevens, as a homestead, his residence in the town of Lancaster and the two acres of ground around it.

2. Because power is given the trustees to defer the sale of a part of the estate as long as two years, if, in their judgment, it should be deemed advisable.

Other objections are urged, but these two are chiefly relied upon.

It appears from the testimony submitted, that shortly before the deed of assignment was executed, T. J. Cureton conveyed to J. H. W. Stevens all his right, title and interest in the said lot and dwelling, so that, at the date of the assignment, this was the separate property of J. H. W. Stevens, and not copartnership property. The conveyance by Cureton was for valuable consid-

eration.  After the assignment to the aforesaid trustees and their acceptance of the trust, to wit, in 1879, J. H. W. Stevens was adjudged a bankrupt by the United States District Court and received his discharge as such.  To him was allotted by that court a homestead in the said family dwelling and one and one-third acres of the lot appurtenant.  To these proceedings in bankruptcy the present plaintiffs were parties, and are, of course, estopped from now agitating in this court any question which either was or should have been made there.  It must also be borne in mind that it is not sought here, nor indeed could it be, to set aside the conveyance of Cureton to Stevens.  We deem further recital of the testimony or facts unnecessary at this point.

The counsel for plaintiffs has, with commendable zeal and ability, urged his positions upon this court; and whilst we have been more than usually entertained and instructed by his learned argument, we are constrained to differ as to the views of the law as applicable to this case.  It is not denied that it has for a long time been well established in this state that a debtor may lawfully prefer one creditor to another.  The only qualification is that the preference must not be undue and inherently calculated to hinder, delay and defeat others.  We see nothing in the deed before us so calculated, nor is anything revealed by the testimony going to show that such was the purpose and intent of the assignors.

It is also well established that a deed of a failing debtor, which is made for the apparent benefit of creditors, but which, in its terms and provisions, secures to the debtor a benefit and advantage at the expense of the creditors, is void.  But we do not regard the reservation of the homestead of Stevens in this deed as rendering it obnoxious to this objection.  It was the sole property of Stevens and need not have been mentioned in the deed. The law allows him a homestead, and, at the end of final process, this family homestead could not have been reached by the plaintiffs or any other creditor.  It was a benefit accruing to him, not by virtue of the reservation in the deed, but by virtue of the constitution.  But it is said that Cureton's deed to Stevens was made in fraud of the rights of creditors and is null, and that this homestead should be pronounced partnership assets; that in

partnership property the right of homestead does not exist. But this remedy against Cureton's deed must be sought by different proceedings than the present action, which assails the assignment, not for matter *dehors* but apparent on the face of the deed. There is no evidence of fraud on the part of Cureton, and the house and lot is, in fact, the separate property of Stevens. This proposition of the plaintiffs is not maintainable. Besides, they were parties to this assignment to Stevens of this homestead by the Court of Bankruptcy, and were at the time aware of the deed to R. M. Miller and T. G. Cureton, and we regard them estopped now to make a question as to the non-existence of the right of homestead in copartnership property. As against the plaintiffs, this property has been allotted to Stevens by a court of competent jurisdiction, so that the reservation in the deed is not of property to which the creditors were entitled, and the insolvent did not thereby reserve a benefit to himself at the expense of the creditors and to their injury.

Nor do we think the deed of assignment obnoxious to the second objection of the plaintiffs, viz., that it defers the sale of the property and thus hinders and delays creditors. The main purpose of such a deed should be to devote at once all the insolvent's property to the benefit of creditors; and if, instead of this, the property is, by the deed, placed for an unreasonable time beyond their reach, it is regarded in the eye of the law as *mala fides*, and will be declared void; but this deed does not seek to do this, nor is such its inevitable effect. On the contrary, it declares on its face that the trustees shall, as soon as practicable, proceed to sell the property, and to pay the debts from the proceeds thereof. But if, in their judgment, having the interests of creditors in view, they should find it unwise to sell the property promptly, they are empowered to retain a part thereof as long as two years, and manage the same for the benefit of the creditors. A perusal of the deed clearly reveals the fact that the trustees are required to act, not for the benefit of the assignors, but for the good of the creditors. The discretion to be exercised by them is intended to be for the advantage of creditors, and hence they are allowed only such time and such discretion as may enable them to save the property from sacrifice. The postpone-

ment of the sale of any part of the property is not enjoined upon them, and it is dependent on circumstances.

We see no cause of complaint because of this reasonable request and power conferred. The action of the trustees is a matter subject to the control of the creditors. There is nothing in the deed to prevent them from urging and effecting an early sale. The other objections raised are of minor force and importance, and the plaintiffs are overruled on all the grounds presented to this court.

It is therefore ordered, adjudged and decreed that the complaint be dismissed, with costs.

The plaintiffs appealed upon the following exceptions:

1. Because the said court, it is respectfully submitted, erred in said decree in refusing to set aside the assignment executed by the said defendants, "Stevens & Cureton," to the defendants, Robert M. Miller and Taylor G. Cureton, on February 13th, 1878.

2. Because the said assignment was made with the intent to hinder, delay and defraud the plaintiffs and others, the creditors of the said "Stevens & Cureton," and should have been declared to be void and of no effect as against these plaintiffs.

3. Because, it is respectfully submitted, the Circuit Court erred in said decree in holding that the reservation to the said Stevens of the two-acre lot in the town of Lancaster, in and by said assignment, did not render the same fraudulent and void as to these plaintiffs.

4. Because, it is respectfully submitted, the Circuit Court erred in said decree in holding that the provision made in said deed of assignment, allowing the trustees thereunder to defer the sale of the property thereby assigned for the space of two years, did not render the same fraudulent and void as to these plaintiffs.

5. Because the Circuit Court erred in said decree in holding that the provision made in said deed of assignment allowing the trustees to carry on the business of merchandising and to rent and operate the farms upon the lands thereby conveyed, for the space of two years, did not render said deed fraudulent and void as to these plaintiffs.

6. Because, it is respectfully submitted, the Circuit Court erred in said decree in finding, as matter of fact, that the conveyance made by Thomas J. Cureton to James H. W. Stevens, on February 12th, 1878, of his interest as a joint owner in fee of the two acre lot in the town of Lancaster, was, as against these plaintiffs, for a valuable consideration and made in good faith.

7. Because, it is respectfully submitted, the Circuit Court erred in said decree in holding that these plaintiffs were estopped by reason of proceedings had in the Court of Bankruptcy (upon the petition of James H. W. Stevens, as an individual, to be adjudged a bankrupt,) from contesting the validity of the reservation of the house and lot in the town of Lancaster, contained in said deed of assignment.

8. Because, it is respectfully submitted, the said decree of the Circuit Court is, in other respects, erroneous.

*Mr. Ernest Moore*, for appellants.

Neither Stevens & Cureton nor the trustees were parties to the bankrupt proceedings, and therefore the matter is not *res adjudicata*, for estoppels must be mutual. *Freem. on Judg.*, §§ 159, 161, 252, 253 ; 9 *Rich.* 452; 1 *Greenl. on Ev.*, § 524 ; 1 *Stark. on Ev.* 195 ; 1 *Bail. Eq.* 291 ; 4 *McC.* 217 ; 1 *Phil. on Ev.* 249 ; 2 *Smith's Lead. Cas.* 683 ; 2 *Hill's Ch.* 345. There is clearly no estoppel as to two-thirds of an acre. The deed of exchange as to partnership creditors, was without consideration ; and the assignees are chargeable with notice of this. 1 *Curt.* 157 ; 5 *Jones' Eq.* 75 ; *Bump on Fraud. Conv.* 355. A partner cannot claim homestead in partnership property. *Thomp. on Homes.*, § 196, *et seq.* ; 2 *Coll. on Part.*, ch. I., § 1; *Story on Part.*, §§ 92–97. The reservation of the lot makes the assignment fraudulent. 2 *Kent* 535; 11 *Wend.* 187 ; 4 *Paige* 23 ; *McM. Eq.* 31 ; 1 *Hill* 22 ; 9 *Rich. Eq.* 252 ; *Cheves' Eq.* 71 ; 1 *Rich. Eq.* 219 ; *Burr. on Assign.*, 188; 12 *Rich. Eq.* 407 ; *Bump on Fraud. Conv.* 381 ; 3 *S. C.* 266 ; 5 *Abb. Pr.* (*N. S.*) 39 ; 20 *Johns.* 448. The authority to defer sale invalidated the assignment. 5 *Ad. & El.* 28 ; 3 *Barb. Ch.* 644 ; 7 *How.* 276 ; 3 *Md.* 11 ; 22 *Tex.* 704 ; 11 *Wend.* 187 ; *Bump on Fraud.*

*Conv.* 405. If the effect is to delay, &c., the actual intent is unimportant. *Bump on Fraud. Conv.* 23, 57; *Cheves' Eq.* 71; *Cowp.* 435; 3 *Strob. Eq.* 55.

*Messrs. Wylie & Hough,* contra.

This assignment is not fraudulent. 2 *Hill's Ch.* 414, 636; *Rice's Eq.* 310. There is no reservation in any of the assigned property; the reservation of a homestead in property formerly of the partnership is permissible. *Thomp. on Homes.,* §§ 181, 211, 214, 215; 41 *Iowa* 35; 5 *S. C.* 499; 15 *Johns.* 571; 9 *Rich. Eq.* 267. The bankrupt proceedings estop plaintiffs. 1 *McC. Ch.* 156; *Bail. Eq.* 110; 1 *Johns. Cas.* 436.

September 20th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. In this case the defendants, (respondents,) Stevens and Cureton, who had been partners, doing business at Lancaster Court House, in this state, under the name and style of Stevens & Cureton, on February 13th, 1878, made an assignment by deed of indenture to defendants, Miller and Cureton, of their entire partnership property, real and personal, for the benefit of their creditors, the property assigned being estimated at about $10,000.

In this assignment creditors to the amount of some $550 were preferred. No release was exacted of the creditors who might accept. Besides the property assigned, the partners had owned a small lot containing two acres in the village of Lancaster, upon which Stevens resided; also, a tract of land—quantity not mentioned—in York county. The day before the execution of the assignment these parties each transferred to the other his interest in said lot and tract, so that Stevens became the sole owner of the lot in Lancaster, and Cureton of the tract of land in York, the consideration of the transfer in each case being the acquisition of the interest of the other in the lands which each, by the exchange, became entitled to in severalty.

In the deed the lot in Lancaster was reserved as the homestead of Stevens. There was nothing said as to the tract in York, acquired by Cureton. The remainder of the partnership

2 N

property seems to have been embraced in the assignment. This property was conveyed to Miller and T. G. Cureton, as trustees, for the benefit of the creditors, with directions to take immediate possession, and, after due notice, to collect the debts, and to sell the property for cash as speedily as possible, either at public or private sale, as in their judgment might be deemed best for the creditors. But, should the trustees find it impracticable to sell the real estate at fair prices, they were empowered to defer the sale for a period not exceeding two years, and in the meantime, in that event, to rent out the lands or farm them, as they thought best; all, however, to be conducted for the benefit of the creditors.

Shortly after the execution of this deed, defendant, Stevens, petitioned the United States District Court to become a bankrupt under the bankrupt laws of the United States, and was discharged on September 12th, 1879. To this proceeding his creditors, the appellants among the others, were made parties, by notice. Under the orders of the bankrupt court the lot in question, or a portion of it, which he had reserved in the deed, was set apart to him as a homestead. From this there was no appeal.

Under this state of facts this action was instituted in the Circuit Court by the appellants, judgment creditors of Stevens, for themselves and such other judgment creditors as might elect to come in and share the expenses, to set aside the general assignment, and also the conveyance of Cureton to Stevens of the small Lancaster lot as fraudulent and void as to them, and for other relief. The case was heard by Judge Hudson, who dismissed the complaint with costs.

From this order the plaintiffs have appealed, claiming that the Circuit judge should have held the assignment void—1st. Because it was made with the intent to hinder, delay and defraud the plaintiffs and other creditors. 2d. Because Stevens reserved the two-acre lot in the town of Lancaster as a homestead ; and, 3d. Because the trustees were empowered to carry on the business for the space of two years. And, also, that he erred in not vacating the conveyance of the two-acre lot in the village of Lancaster by Cureton to Stevens, because, as they alleged, it was

without consideration, and therefore void; and, also, that he erred in holding that the plaintiffs were estopped from contesting the validity of the reservation of the two-acre lot by Stevens, on the ground that they were parties to the bankrupt proceedings when the lot was set apart to him as a homestead.

The first ground of attack upon the assignment involves a question of fact. Did the respondents, Cureton & Stevens, execute the assignment with the intent to hinder, delay and defraud the plaintiffs? If so, this would certainly mark the assignment as fraudulent, and the Circuit judge, no doubt, would have decreed it void; but upon this point Judge Hudson said: "We see nothing in the deed before us so calculated, nor is there anything revealed in the testimony going to show that such was the purpose and intent of the assignors."

We have carefully examined the deed of assignment and the facts agreed upon by counsel, contained in the "case," and we concur with Judge Hudson, that there is nothing on the face of the deed, or in the facts submitted, which evinces any intention on the part of respondents to hinder, delay and defraud the plaintiffs, or any other of their creditors.

A failing debtor has no right to stipulate for terms in any assignment which he may make for creditors, securing benefit or advantage to himself at the expense of his creditors; but this the respondents have not done. They seem to have surrendered their entire partnership property. It is true that the lot in Lancaster was not embraced in this surrender. This was reserved as a homestead for Stevens, and, as was said by Judge Hudson, need not have been mentioned in the deed, as it was the private property of Stevens. There seems to be no ground, therefore, to assail the deed on account of this reservation, certainly not in the absence of all proof showing a fraudulent intent on the part of these parties in the exchange which they made, and by which Stevens became the sole owner of this lot.

There is nothing on the face of the deed except a preference to some creditors over others. In the face of the decisions in this state it cannot be contended that this in itself is an evidence of a fraudulent intent. On the contrary, whatever may be thought of the morality of permitting a debtor to give prefer-

ences about which, if it was an open question, much might be said, yet his legal right to do so is well established in this state; and the decisions have even gone further, holding that this preference may be accompanied with a condition that the creditors shall release the debtor, the only qualification being that the preference shall be free from an intent to delay, hinder and defraud other creditors. It is needless to discuss the wisdom or soundness of this principle at this late day. The doctrine has been long since established in this state, as well as elsewhere, and is now a well-settled principle in our jurisprudence. *Niolon v. Douglass*, 2 *Hill's Ch.* *443; *Maples* v. *Maples, Rice's Eq.*, 300.

Is the deed vulnerable in the feature which authorizes the trustees to defer the sale for a period not exceeding two years? We think not. There was no advantage to the assignors in this; on the contrary, it appears to have been intended for the benefit of the creditors. It was intended to prevent a sacrifice of the property, and, besides, it was not a peremptory injunction. It was more in the nature of advice, and was left entirely to the discretion of the trustees. It does not appear to us that there was a single element of fraud in this.

Should the judge have decreed the conveyance of Cureton to Stevens of the Lancaster lot void because without consideration? He declined to do so, for two reasons. 1st. He said "the remedy against Cureton's deed must be sought by different proceedings than the present action, which assails the assignment, not for matters *dehors*, but apparent on the face of the deed." He further says that "there was no evidence of fraud on the part of Cureton, and the house and lot is, in fact, the separate property of Stevens." 2d. He held that the plaintiffs were estopped by the bankrupt proceedings whereby this lot was set apart to Stevens as a homestead, without objection by the plaintiffs. For these two reasons he declined to interfere. In our opinion he was not in error. The deed of Cureton to Stevens does not appear to have been before the court. There was no evidence that it was without consideration, or that its purpose was to defraud creditors. These facts the judge could

not be expected to assume, and without these there was certainly no ground to set the deed aside.

And besides, the plaintiffs had full opportunity to raise the question as to the validity of this deed, and to claim that the lot was partnership property before the bankrupt court. They were parties to the proceeding in that court, and having failed to avail themselves there of the opportunity to assail this deed, we think, with the Circuit judge, that they have waived their rights in this respect, and that they are now estopped.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

McIVER and McGOWAN, A. J.'s, concurred.